IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CRYSTAL K. MILLSAP                                                                    PLAINTIFF

vs.                                         No. 3:19-CV-273-JM

REGIONS BANK                                                                          DEFENDANT

## ORDER

Pending is a motion filed by Regions Bank (Regions) to strike Plaintiff's demand for jury trial. (Doc. No. 25). Plaintiff has responded, and the motion is ripe for consideration.

## Background

This case involves a dispute between Plaintiff and Regions over a check deposited into a Regions account (the "2738 account"). The account was opened in the name of Stephan Millsap on March 20, 2017, and he added Plaintiff as an "additional authorized signatory" on the account at that time. (Doc. No. 25-1). That same day, Plaintiff opened two deposit accounts in her name at Regions. *Id.*

In her amended complaint (Doc. No. 7), Plaintiff alleges that on March 31, 2017, CNL Healthcare Properties, Inc., with whom Plaintiff had an investment account, issued a check payable to Plaintiff and Stephen Millsap as joint tenants with the right of survivorship (JTROS) in the amount of $133,855.38. On April 13, 2017, Stephen Millsap received the check and deposited it into the 2738 account at Regions. At the time the check was deposited, Plaintiff had been removed as a signatory from the account, without her knowledge. Plaintiff alleges that Stephen Millsap had forged her name on the check and that Regions had wrongfully removed Plaintiff from the 2738 account without her authorization. Stephen Millsap is now deceased.

Plaintiff has sued Regions for conversion of an instrument, breach of contract, and

negligence arising out of this series of events. She has demanded a jury trial pursuant to the Constitution of the State of Arkansas. Regions has moved to strike this demand on the basis that Plaintiff contractually waived her right to a jury trial. This Court's jurisdiction is based on diversity.

<u>Motion to Strike Demand for Jury Trial</u>

Regions argues that Plaintiff has contractually waived her right to a jury trial in this dispute. In support of its motion, Regions attaches the declaration of Linda Dupras, Senior Retail Operations Manager for Regions. (Doc. No. 25-1). Attached as exhibits to Ms. Dupras's declaration are copies of three separate signature cards signed by Plaintiff and the single deposit agreement in force for each. (Doc. Nos. 25-2, 4-6). Two of the signature cards are for her personal accounts (one of which included the signature of Stephen Millsap as an additional signatory) and one was for the 2738 account for which she was, for a time, an authorized signatory. All three accounts were opened in March of 2017. Each of the 2-page account signature cards Plaintiff signed contained an acknowledgment that she had received the deposit agreement. Specifically, the account signature card provides the following:

> Each person signing this Account Signature Card, whether in writing or by use of an electronic signature, (i) confirms that he/she has reviewed the information set forth in this Account Signature Card and that such the information is true and correct. (ii) acknowledges receipt of the Deposit Agreement. the Pricing Schedule. this Account Signature Card, and other related disclosures (including the Regions Privacy Pledge to Consumers and the disclosure entitled "What You Need to Know About Overdrafts and Overdraft Fees") applicable to the account described herein (collectively, the "Account Terms"), all of which Account Terms are incorporated herein by reference, (iii) agrees to each and every term, condition, and provision of the Account Terms [including the ARBITRATION AND WAIVER OF JURY TRIAL PROVISIONS], as may be amended from time to time by Regions Bank in its discretion, subject to the requirements of applicable law, and (iv) authorizes Regions Bank to open the account described herein, subject to the Account Terms.

2

*Id.* The deposit agreement, which is forty-six pages long in brochure format, contains the following notice on page two, in a bold text and in a boxed format:

> **ARBITRATION AND WAIVER OF JURY TRIAL. THIS AGREEMENT CONTAINS PROVISIONS FOR BINDING ARBITRATION AND WAIVER OF JURY TRIAL. YOUR ACCEPTANCE OF THIS AGREEMENT INCLUDES YOUR ACCEPTANCE OF AND AGREEMENT TO SUCH PROVISIONS. WHEN ARBITRATION IS INVOKED FOR CLAIMS SUBJECT TO ARBITRATION, YOU AND REGIONS WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM AND YOU WILL NOT HAVE THE RIGHT TO BRING OR PARTICIPATE IN ANY CLASS ACTION OR SIMILAR PROCEEDING IN COURT OR IN ARBITRATION.**

(Doc. 25-6) (emphasis in original). The table of contents for the deposit agreement lists "Arbitration and Waiver of Jury Trial" as a topic to be found on pages 3-6.  The deposit agreement states on page six that **"[w]hether any controversy is arbitrated or settled by a court, you and we voluntarily and knowingly waive any right to a jury trial with respect to such controversy to the fullest extent allowed by law."** *Id.* (emphasis in original).

Plaintiff argues in response that the jury trial waiver was not knowing and was not voluntary.   In her affidavit, she states that "although the Deposit Agreement may have been made available to me online, [she] was not made aware of that fact or given any opportunity to review same prior to signing the Signature Card." (Doc. No. 27).   She also stated that she was "not given any time to review what I signed or any additional documents," that "[p]apers were set in front of me by the branch manager and [she] was told where to sign," that she did not negotiate this provision with Regions, that she was not given an option regarding the jury waiver provision, that the deposit agreement was a standard form, the waiver language did stand out

3

because it was the same size as the other text, and she is not an attorney. *Id.*

Analysis

Fed.R.Civ.P. 38(a) provides "[t]he right of a trial by jury as declared by the Seventh Amendment ... shall be preserved to the parties inviolate."  However, parties may contractually waive their right to a jury trial. *Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l,* 373 F.2d 136, 142 (8th Cir.1967).  The right to a jury trial protected can only be relinquished "knowingly and intentionally." *Nat'l Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977).  "[B]ecause the right to a jury trial is fundamental, courts must indulge every reasonable presumption against waiver." *Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999) (citing *Burns v. Lawther,* 53 F.3d 1237, 1240 (11th Cir.1995)) (internal quotation omitted).  "A party's "right to a jury trial in the federal courts is to be determined on the basis of federal law in diversity as well as in other actions." *Klein v. Shell Oil Co.*, 386 F.2d 659, 662 (8th Cir. 1967) (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)).

Some factors courts consider in determining whether a contractual waiver was knowing and voluntary include (1) whether the waiver provision is on a standardized form agreement or in a newly-drafted document; (2) whether the waiver is in fine print or in large or bold print, (3) whether the waiver is set off in a paragraph of its own; (4) whether the provision is in a take-it-or-leave-it contract or in a negotiated contract; (5) the conspicuousness of the waiver in comparison to the length of the contract; (6) whether the waiving party was represented by counsel; (7) whether the waiving party was a sophisticated business person aware of the consequences of the waiver; (8) whether the parties were manifestly unequal in bargaining

4

power; and (9) whether there was an opportunity to review all of the terms of the contract and whether the waiving party did so. *Regions Equip. Fin. Corp. v. Blue Tee Corp.*, No. 4:16-CV-140-CEJ, 2016 WL 2643359, at *2 (E.D. Mo. May 10, 2016).   See also *Miner v. Schrieber*, No. 4:19-CV-95-SPM, 2020 WL 3581617, at *3 (E.D. Mo. July 1, 2020).

Applying those factors to this case, the Court finds that the waiver was knowing and voluntary.   The fact that the jury waiver was included in a preprinted, standardized contract does not bar its enforceability.   *Westgate GV at the Woods, LLC v. Dickson*, 2010 WL 4721245, at *2 (W.D. Mo. Nov. 15, 2010); *Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1564 (Fed.Cir.1990)) (enforcing contractual jury waiver despite that the contract was presented in a "take it or leave it" manner).   Many, if not most, contracts signed by consumers are pre-printed and standardized, including mortgages, car loans, credit card agreements, software licensing agreements, etc.   Plaintiff does not deny that she signed the signature card for the 2738 account (or the other two in her name).   The signature card is two pages long and contains at the top of the second page above Plaintiff's signature the easy-to-understand language that "[e]ach person signing this Account Signature Card, whether in writing or by the use of an electronic signature . . . acknowledges receipt of the Deposit Agreement   . . . [and other documents] (collectively, the "Account Terms") . . . all of which are incorporated herein by reference. . . and agrees to each and every term . . . . (including the ARBITRATION AND WAIVER OF JURY TRIAL PROVISIONS . . ." (Doc. Nos. 25-5).   It is a short document, only two pages, it is not difficult language, and only the alert to the arbitration and waiver provisions appear in all caps.

The incorporation of the deposit agreement into the account signature card is certainly not a hallmark of conspicuousness.   "The practice of having the other party agree in one

document to provisions set out in another is not ideal and can only reduce the likelihood that the other party will actually read the provisions of the agreement." *Perlman v. Wells Fargo Bank, N.A.*, 2012 WL 12854876 (S.D. Fla. Apr. 3, 2012).   However, incorporation by reference is a common practice, and the Court "is reluctant to find a clause inconspicuous on the theory that a party elected not to read the provisions of the agreement."  *Id.*   While Plaintiff states that she was not given a copy of the deposit agreement and that she was not given time to read everything before she was told where to sign, she gave no indication that she was pressured into signing quickly or that she in any way indicated to Regions that she needed time to access or review the documents.   Had she requested and reviewed the deposit agreement, there was a notice of a jury waiver provision—which was effective for both Regions and Plaintiff—in all caps, in bold print, and set off in a boxed paragraph on page two of the deposit agreement. Again, the language was clear.   The table of contents for the Deposit Agreement lists "Arbitration and Waiver of Jury Trial" as a topic to be found on pages 3-6, and on page 6, the deposit agreement clearly states, set off by bold type, that **"[w]hether any controversy is arbitrated or settled by a court, you and we voluntarily and knowingly waive any right to a jury trial with respect to such controversy to the fullest extent allowed by law."** *Id.* (emphasis in original).   While the brochure-format deposit agreement is lengthy, the table of contents and numbered sections with their headings printed in bold make the document and its terms accessible.

While Plaintiff states that she is not an attorney, this does not indicate a lack of business sophistication.   The evidence before the Court is that she opened two bank accounts in March of 2017, was the authorized signatory on another, and she was the holder of an investment account with CNL Healthcare Properties that she requested be cashed out the same month that she

6

opened the accounts at Regions. As previously stated, the language of the jury waiver and the alerts to its provisions appeared in plain language that would not require sophistication or a law degree to understand.

While the right to a jury trial is fundamental and rightfully well-guarded, the right of parties to enter into lawful agreements and to enforce them is also protected under the law. "A party normally is obligated to 'learn and know the contents of a contract before he signs and delivers it.'" *Ser Yang v. W. S. Life Assur. Co.*, 713 F.3d 429, 433 (8th Cir. 2013) (quoting *Hoshaw v. Cosgriff,* 247 F. 22, 26 (8th Cir.1917)). As the Eighth Circuit recognized over a century ago in *Howshaw*:

> It is the duty of every contracting party to learn and know the contents of a contract before he signs and delivers it. To permit a party, when sued on a written contract, to admit that he signed it, but deny that it expresses the agreement he made, or to allow him to admit that he signed it, but did not read it or know its stipulations, would absolutely destroy the value of all contracts.

247 F. at 26. See also *Upton v. Tribilcock*, 91 U.S. 45 (1875).[1]

Plaintiff also argues that she was removed from the 2378 account prior the events that form the basis of her complaint and, therefore, the terms of the deposit agreement does not govern this dispute. The Court disagrees. The deposit agreement states on the first page of text, first paragraph: "[t]his Agreement covers any and all deposit accounts you have or have had from time to time with Regions Bank." (Doc. No. 26-6, p. 2). The first numbered paragraph of the deposit agreement includes the following language: "1. Acceptance Of This Agreement. By

---

[1] "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." *Id*. at 50.

signing a signature card when you open an account, by signing any signature maintenance card or other account document for an account . . . you agree to the terms of this Agreement, as amended." (*Id*. at p. 7).   By the terms of the deposit agreement for each of the three Regions accounts for which she signed account signature cards, the terms of the deposit agreement apply to the dispute at issue even after she was removed as an authorized signatory the 2378 account.

For these reasons, Region's motion to strike Plaintiff's demand for a jury trial (Doc. No. 25) is GRANTED.   The case will remain set for trial before the Court during the week of March 29, 2021.

IT IS SO ORDERED this 5th day of October, 2020.

_____
UNITED STATES DISTRICT JUDGE