IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CRYSTAL K. MILLSAP                                                                                    PLAINTIFF

vs.                                            No. 3:19-CV-273-JM

REGIONS BANK                                                                                        DEFENDANT

ORDER

Pending is Regions Bank's ("Regions") motion for summary judgment on the remaining two claims against it, conversion of an instrument and breach of contract. (Doc. No. 35-1). It her response to the motion, Plaintiff concedes that Regions is entitled to summary judgment on the breach of contract claim. For the reasons stated below, the Court finds the motion for summary judgment on the conversion claim is denied.

I. Undisputed Facts[1]

Stephan Millsap and Plaintiff Crystal Millsap were married on September 15, 2014 and were divorced on August 31, 2016. The divorce was uncontested, with Plaintiff not appearing, and the decree gave Mr. Millsap sole ownership and possession of the house he had owned prior to their marriage (565 Falls Boulevard) and sole possession of any amounts held in joint accounts as well as those held solely in his name.

Mr. Millsap and Plaintiff's relationship did not stop short with the entry of the divorce decree. At the time the decree was entered, Plaintiff had two investment accounts in her name, one with Corporate Capital Trust ("CCT") and the other with CNL Healthcare Properties, Inc. ("CNL"). On December 21, 2016, both investment accounts were retitled in the name of

---

[1] These are taken from the parties' joint pretrial statement (Doc. No. 51), which was filed after the motion for summary judgment unless otherwise indicated.

Plaintiff and Mr. Millsap as Joint Tenants with Right of Survivorship ("JTROS").   Plaintiff and Mr. Millsap liquidated both accounts and were issued a check from each.

The CCT check in the amount of $124,163.05 was issued on March 8, 2017 payable to Plaintiff and Mr. Millsap as JTWROS. The check was mailed to 565 Falls Boulevard, and Plaintiff admits that she received it there.

The check from CNL in the amount of $133,855.38 was issued on March 31, 2017 and was also payable to Plaintiff and Mr. Millsap as JTWROS and was mailed to the 565 Falls Boulevard address.   While Plaintiff does not admit receiving the check, she does admit that she knew CNL had issued the check when it sent an account statement dated March 31, 2017 to the 565 Falls Boulevard address where she was living; that account statement showed that all the investments had been redeemed. (Doc. 51, ¶ 21).[2]

On March 15, 2017, Plaintiff opened an account in her sole name at Cabot branch of Regions ("Plaintiff's 2657 account"); her address was listed as 565 Falls Boulevard.   The opening deposit to this account was the CCT check for $124,163.05.   Plaintiff and Mr. Millsap both indorsed the check and were both present at Regions when it was deposited. Plaintiff testified that Mr. Millsap "had to be" there to indorse the check for deposit with her because they "both were required to be there with anything over $10,000."   (Doc. No. 41-1, p. 69)

On March 20, 2017, Mr. Millsap opened an account at Regions ("Mr. Millsap's account"), naming himself as sole owner of the account and listing Plaintiff as an additional

---

[2] Plaintiff submitted her own declaration in response to the motion for summary judgment in which she contradicts her deposition testimony (Doc. No. 38); to the extent that the declaration contradicts her deposition and the parties' subsequently stipulated facts, the declaration will be disregarded.

2

authorized signer on the account; he also listed 565 Falls Boulevard as his home address. The opening deposit on his account was a $10,000 transfer from Plaintiff's 2657 account. At the same time, Plaintiff opened another account at Regions ("Plaintiff's 2746 account") listing herself as the sole owner and listing Mr. Millsap as an additional authorized signer on the account. The opening deposit to this account was also a $10,000 transfer from Plaintiff's 2657 account. These accounts were opened at the same Cabot branch of Regions. At the time these two $10,000 transfers were made, the only source of funds in Plaintiff's 2657 account was the CCT check proceeds.

On April 7, 2017, Plaintiff was removed as an authorized signer on Mr. Millsap's account which prevented her from further access to that account. The CNL check was deposited to Mr. Millsap's account at Regions on April 13, 2017. While the check contains indorsements for both Mr. Millsap and Plaintiff, Plaintiff claims her signature on this check was forged, which is the basis for her conversion claim against Regions. For purposes of this motion, Regions assumes that Plaintiff's indorsement was forged.

The parties submitted an agreed chart summarizing the deposits and transfers between Plaintiff's two accounts and Mr. Millsap's account starting when the CCT check was deposited on March 15, 2017. (Doc. 51, p. 9). The chart reflects that as to the $258,018.43 combined total of the CCT and the CNL checks, Plaintiff received $131,663.05 of the proceeds, and Mr. Millsap received $126,355.38. The bulk of the proceeds received by Plaintiff were deposited prior to the deposit of the CNL check; following the deposit of the CNL check on April 13, 2017, Plaintiff received only $11,000 according to the chart.

Mr. Millsap died on August 1, 2017. The administrator of his estate closed Mr.

Millsap's account on September 25, 2017 and was issued a check for the $15,350.35 remaining in the account. On January 11, 2018, Plaintiff presented her claim to Regions that her indorsement on the CNL check was forged.

## II.   Summary Judgment Standard

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp.* at 327.

## III.   Analysis

Under the Universal Commercial Code, "[i]If an instrument is payable to two (2) or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." Ark. Code Ann. § 4-3-110(d). An instrument is converted "if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Ark. Code Ann. §4-3-420(a). For purposes of its

4

motion for summary judgment, Regions assumes that Plaintiff's indorsement on the disputed check was forged. Note 1 to Ark. Code Ann. § 4-3-420 illustrates the situation present in this case: when a check is payable to John and Jane Doe, "[i]f John indorses the check and Jane does not, the indorsement is not effective to allow negotiation of the check. If Depositary Bank takes the check for deposit to John's account, Depositary Bank is liable to Jane for conversion of the check if she did not consent to the transaction." Ark. Code Ann. § 4-3-420 (West).

Regions argues that even assuming Plaintiff's indorsement was forged, it is entitled to summary judgment on three grounds: (1) Plaintiff ratified her indorsement, (2) Plaintiff already received her interest in the CNL check, and (3) Plaintiff is estopped from asserting a claim against Regions.

A.   Ratification

Regions argues that Plaintiff ratified the deposit of the CNL check with the forged endorsement when she received and spent proceeds from the check. Arkansas law recognizes that "[a]n unauthorized signature may be ratified for all purposes of this chapter." Ark. Code Ann. § 4-3-403(a). The Notes define ratification as the "retroactive adoption of the unauthorized signature by the person whose name is signed" through either express statements or conduct such as in "the retention of benefits received in the transaction with knowledge of the unauthorized signature." Ark. Code Ann. § 4-3-403(a) (Note 1).   The Arkansas Supreme Court has also found ratification when persons whose names had been forged "unquestionably ratified the signatures by retaining the benefits of the transaction." *Starkey Const., Inc. v. Elcon, Inc.*, 457 S.W.2d 509,

514 (Ark. 1970).³ In *Starkey*, the subcontractor forged lienholders' indorsements on multiple progress checks that were issued by the contractor jointly payable to the lienholders and the subcontractor and deposited the checks in the subcontractor's account. However, all but one of the lienholders subsequently received the precise amount they were owed by the subcontractor for each of the progress checks. As to these lienholders, the court held that the drawee bank was not liable to the drawer and general contractor because the money had reached the parties the drawer intended.

Here, a check in the amount of $133,855.38 that was payable to Plaintiff and Mr. Millsap as JTWROS was deposited by Mr. Millsap into his solely-owned account with Plaintiff's indorsement having been forged. Plaintiff's undisputed deposition testimony is that while she knew the check was coming, she did not know it had been received and deposited into Mr. Millsap's account with her forged signature. (Doc. 41-1, pp. 46-48, 50). Nor, she testified, did she know that she had been taken off the account as an authorized signer less than a week before the check was deposited. *Id.* While Plaintiff acknowledges receiving transfers totaling $11,000 from Mr. Millsap account after he deposited the CNL check, Regions has not proven that she knew the source of the funds were from the CNL check. Plaintiff testified that Mr. Millsap had money other than what was in his account at Regions, and that his family had a lot of money.

---

³ While in *Starkey* the court was faced with a drawer attempting to recover from the drawee bank for paying the check he had written on forged endorsements, other courts, citing *Starkey*, have used this equitable exception to conclude that "[w]here the proceeds of a forged check reach the intended payee, there can as a general rule be no cause of action by anyone on the forged endorsement. The payee cannot sue . . . since he has suffered no damage—he has, after all, received the monies intended for him." *Bankers Tr. of S.C. v. S.C. Nat. Bank of Charleston*, 284 S.C. 238, 244, 325 S.E.2d 81, 85 (Ct. App. 1985) (quoting *Atl. Bank of New York v. Israel Disc. Bank Ltd.*, 108 Misc. 2d 342, 441 N.Y.S.2d 315 (App. Term 1981)).

(Doc. No. 41-1, p. 76). She also testified that Mr, Millsap had never told her that he had received the check. (*Id*. at 40).   While the bank records show that Plaintiff did receive some of the funds from the CNL check, the evidence does not support the conclusion that Plaintiff knew the source of the funds he was transferring to her.   Regions's motion for summary judgment on the issue of ratification is denied.

B.  Plaintiff's Interest in the Check

Next Regions argues that is it entitled to summary judgment because Plaintiff has received all that she is entitled to receive of the jointly held funds. Regions cites to *Ferrell v. Holland*, 169 S.W.2d 643 (Ark. 1943) for the proposition that "[a]n estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives." *Id*. at 647. Regions also relies on *Feagin v. Jackson*, 419 S.W.3d 29 (Ark. App. 2012) holding that when there are two joint tenants, each has an undivided one-half interest in the property subject to the joint tenancy.   Plaintiff agrees that this law applies to this case. (Doc. 43 ¶ 17.)

Regions argues that the bank records submitted in support of its motion for summary judgment "conclusively establish that Plaintiff received and spent the proceeds of the [CCT] and the [CNL] check to which she was entitled while she and Mr. Millsap were both alive." (Doc. 36-1, p. 7).   In fact, Regions argues that Plaintiff received more than her fair share –$131,663.05 compared to the $126,355.38 retained by Mr. Millsap.   Regions's argument is grounded on the assumption that funds from the CCT and the CNL checks are to be considered collectively for the purposes of determining what Plaintiff was entitled to as a joint tenant.   However, the cases cited by Regions do not support this assumption. *Ferrell* involved a single jointly held bank certificate, the dispute in *Feagin* was over a single parcel of real estate, and in *Hogan v. Hogan*,

7

855 S.W.2d 905 (Ark. 1993), the dispute was over the proceeds of a single certificate of deposit held by three joint tenants.

The CCT check was deposited by Plaintiff and Mr. Millsap together, and the evidence indicates that Mr. Millsap knowingly allowed her to keep the vast majority of those funds even though as a joint tenant he was entitled to more. There is no suggestion that Mr. Millsap intended to hold Plaintiff accountable for having received more than her share of that check. Likewise, there is no evidence that Plaintiff and Mr. Millsap had an agreement that this disparity would be addressed with the CNL check.[4] The evidence suggests that that Mr. Millsap took Plaintiff off his account as an authorized signer without her knowledge, deposited the check into his solely-held account without her knowledge, and then began transferring more money to Plaintiff's account from that check. Regions has failed to establish that it is entitled to summary judgment on the basis that Plaintiff has received all that she is entitled to receive from the CNL.

C. Estoppel

Regions's third argument is that Plaintiff is estopped from asserting a claim for conversion as a matter of law. Under the doctrine of estoppel, a person may be precluded by his conduct from asserting a right which he otherwise would have had. *Daves v. Hartford Accident and Indem. Co.,* 788 S.W.2d 733 (Ark. 1990)). Estoppel has four elements: "(1) the party to be estopped must know the facts; (2) the party to be estopped must intend that the conduct be acted upon or must act so that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) the party asserting the estoppel must rely on the other's conduct and be injured by that reliance." *In re*

---

[4] Plaintiff attempts to establish in her declaration that she and Mr. Millsap had an agreement that she was entitled to all of the proceeds, but this is in direct conflict with her deposition testimony that there was no agreement.

*Crews,* No. 4:04-BK-14692M, 2005 WL 1420842, at *3 (Bankr. E.D. Ark. June 16, 2005) (quoting *Shelter Mut. Ins. Co. v. Kennedy,* 60 S.W.3d 458, 460 (Ark.2001).

Regions argues that Plaintiff is estopped from making a claim of conversion because—despite knowing sometime after receiving the CNL statement ending March 31, 2017 that the account balance was zero—she failed to report the forgery to the bank until January 11, 2018. Regions challenges the reason given by Plaintiff in her deposition for not asking about the check earlier: she said she was not worried about the CNL check until shortly before she reported it as having been forged because she did not need the money, but the bank statements show that both of Plaintiff's accounts had become overdrawn by May 22, 2017. Regions points out that Plaintiff never questioned Mr. Millsap about the check, she did not file a police report with respect to the forgery, and she did not make a claim on Mr. Millsap's estate, which has since been closed. Had Plaintiff notified Regions earlier, it argues, it could have placed a hold on Mr. Millsap's account and investigated the forgery claim.

In her response, Plaintiff counters that she had no knowledge of the forgery until shortly before she reported it. According to her deposition testimony, she found out from a Regions's Little Rock branch manager that the check had been deposited into Mr. Millsap's account with an indorsement purporting to be hers after his account had been closed by his administrator. (Doc. 41-1, pp. 81-83). Viewing the evidence most favorably to Plaintiff, there is a question of fact as to when Plaintiff knew her signature had been forged and the check had been deposited. Regions is not entitled to summary judgment on the issue of estoppel.

THEREFORE, Regions's motion for summary judgment (Doc. No. 35) is GRANTED in part and DENIED in part. It is GRANTED to the breach of contract claim (Count II) and

9

DENIED as to the conversion claim (Count I).

    IT IS SO ORDERED this 13th day of May, 2021.

                                                                           UNITED STATES DISTRICT JUDGE